## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MICHELLE COLLINS, INDIVIDUALLY AND | * | CIVIL ACTION |
| AS PERSONAL REPRESENTATIVE OF THE ESTATE | * | |
| OF MICHAEL COLLINS | * | |
| | * | |
| VERSUS | * | NO. 14-1900 |
| | * | |
| A.B.C. MARINE TOWING, L.L.C. AND | * | SECTION:  "L" (3) |
| BOARD OF COMMISSIONERS PORT | * | |
| OF NEW ORLEANS | * | |

## ORDER & REASONS

Before the Court are two motions: (1) Certain Underwriters at Lloyd's, London's ("Hull Underwriters") Motion for Summary Judgment as to Boh Bros. Construction Co., L.L.C.'s ("Boh") claim for "Sue and Labor" coverage (R. Doc. 214) and (2) Boh's Cross-Motion for Partial Summary Judgment as to "Sue and Labor" coverage (R. Doc. 217).  Having reviewed the parties' briefs and the applicable law, the Court now issues this Order and Reasons.

## I.    BACKGROUND

This case arises out of a fatal allision with the Florida Avenue Bridge, which spans the Inner Harbor Navigational Canal in Orleans Parish, Louisiana.  On, or about, August 12, 2014, the M/V CORY MICHAEL ("CORY MICHAEL") was towing the 4600 Ringer Crane Barge and Manitowic 4600 Ringer Crane (collectively the "Crane Barge") through the Canal from the Intercostal waterway towards the Mississippi River.  The COREY MICHAEL was owned and operated by ABC Marine Towing, L.L.C. ("ABC") whereas the Crane Barge was owned by Boh. At approximately midnight on August 13, 2014, the mast of Crane Barge allided with the bridge, causing the crane boom to fall onto the pilot house from which Michael Collins was operating

the CORY MICHAEL, resulting in his death.  Several other crew members claim injury from this allision.

At the time of the incident, ABC had a Master Service Contract ("MSC") with Boh, regarding the chartering of vessels to Boh.  The MSC obligated ABC to maintain several insurance policies and to name Boh as an additional insured (R. Doc. 217-3 at §10). Specifically, the MSC required ABC to maintain "Hull and Machinery Insurance in amounts equal to the fair market value of the Vessel and any substitute vessel (when applicable)."  *Id.* Pursuant to this obligation, ABC purchased from Hull Underwriters policy number TRM-405819 ("the Hull and Machinery Policy" or the "Policy"). (R. Doc. 217-4).  It is undisputed that the Policy was in effect at the time of the allision.

The Policy issued by Hull Underwriters to ABC recites in pertinent part:

**ASSURED**

This policy insures *as per attached schedule* hereinafter referred to as the Assured.

If claim is made under this policy by anyone other than the Owner of the vessel, such person shall not be entitled to recover to a greater extent than would the Owner, had claim been made by the Owner as an Assured named in this policy.

**VESSEL**

The Subject Matter of this insurance is the vessel called the *as per attached schedule* or by whatsoever name or names the said vessel is or shall be called, which for purposes of this insurance shall consist of and be limited to her hull, launches, lifeboats, rafts, furniture, bunkers, stores, supplies, tackle, fittings, equipment, apparatus, machinery, boilers, refrigerating machinery, insulation, motor generators and other electrical machinery.

**AGREED VALUE**

The vessel, for so much as concerns the Assured, by agreement between the Assured and the Underwriters in this policy, is and shall be valued at *as per attached schedule*.

**AMOUNT INSURED HEREUNDER**

*As per attached schedule*.

**SUE AND LABOR**

And in case of any Loss or Misfortunate, it shall be lawful and necessary for the Assured, their Factors, Servants and Assigns to sue, labor, and travel for, in, and about the defense, safeguard and recovery of the vessel, or any part thereof, without prejudice to this insurance, to the charges whereof the Underwriters will contribute their proportion as provided below.  And it is expressly declared and agreed that no acts of the Underwriters or Assured in recovering, saving or preserving the vessel shall be considered as a waiver or acceptance of abandonment.

…

If claim for Total Loss is admitted under this policy and sue and labor expenses have been reasonable incurred in excess of any proceeds realized or value recovered, the amount payable under this policy will be the proportion of such excess that the amount insured hereunder (without deduction for loss of damage) bears to the Agreed Value or to the sound value of the vessel at the time of the accident, whichever value was greater, provided always that Underwriters' liability for such expenses shall not exceed their proportionate part of the Agreed Value.  The foregoing shall also apply to expenses reasonably incurred in salving or attempting to salve the vessel and other property to the extent that such expenses shall be regarded as having been incurred in respect of the vessel.

(R. Doc. 217-4).  The Hull and Machinery Policy also specifically includes "Collision

and Tower's Liability", "Pilotage and Towage" coverage, and a "Contractual Liability

Extension," which reads, in pertinent part as follows:

In consideration of the premium charged for which this insurance is written, the coverage afforded under this Policy is extended to insure the liability of the Assured arising out of hold harmless and/or indemnity agreements contained in such contracts as have been or may be entered into by the Assured for the furnishing of vessel services…

*Id*.  Pursuant to a settlement agreement signed on July 23, 2015, Hull Underwriters have paid to

Boh the total sum of $680,000.00, while specifically reserving Boh's claim for "Sue and Labor"

expenses under the Policy.[1]  (R. Doc. 217-5).  Boh asserts that this payment was pursuant to the

collision and tower's liability, pilotage and towage, and contractual liability provisions of the

Policy.  Whereas, Hull Underwriters assert that (i) they participated in the settlement agreement

---

[1] On June 12, 2015, Hull Underwriters sent a "reservation of rights" letter to Boh stating that, "since the claimed Sue and Labor expenses were presumably incurred to avoid or minimize a loss to the Crane Barge, i.e., a non-scheduled vessel, they were not incurred to avoid or minimize a loss for which Hull Underwriters 'would have been liable', as the Policy requires.  Therefore the expenses are not properly recoverable as Sue and Labor." (R. Doc. 217-6).

as the primary Collision and Tower's liability insurer of ABC, not in their alleged status as the Hull Underwriters of Boh and (ii) the settlement payment to Boh was for ABC's potential liability to Boh in tort, not by virtue of any first-party coverage owed by Hull Underwriters to Boh.

## II.  PRESENT MOTIONS

The disagreement at the center of these cross-motions is whether Boh is covered under the Hull and Machinery Policy for Sue and Labor expenses associated with damage to Boh's Crane Barge.  Hull Underwriters argue that, even assuming that Boh is an additional assured under the Policy generally, Boh is not entitled to coverage under the Hull Policy's Sue and Labor clause because that clause only provides coverage for expenses incurred to minimize a loss to scheduled vessels i.e., vessels specifically listed on a schedule, or list, physically attached to the Hull Policy.  Accordingly, Hull Underwriters assert they are entitled to Summary Judgment on Boh's claims for Sue and Labor coverage because Boh's Crane Barge was not listed and was never intended to be listed on the Policy's schedule of vessels.  Boh argues that the Sue and Labor section of the Policy definitively establishes that if there is a claim for Total Loss, as in this case, the Policy covers Sue and Labor and salvage expenses of vessels and other property, such as Boh's Crane Barge.  Given that both Boh and the Hull Underwriters agree that there are genuine issues of fact regarding the amount of sue and labor expenses incurred by Boh, the only issue presently before this Court is *whether* Boh is entitled to coverage under the Policy's Sue and Labor clause.

## III.  LAW AND ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th Cir.2008).

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. When the moving party has met its Rule 56(c) burden, "[t]he non-movant cannot avoid summary judgment ... by merely making 'conclusory allegations' or 'unsubstantiated assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir.2002) (quoting *Little*, 37 F.3d at 1075). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986).  All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little,* 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta,* 530 F.3d at 399.

**B.  Applicable Law**

It is indisputable and, in fact, both parties agree, that Louisiana law governs the construction of marine insurance policies unless displaced by a controlling federal maritime law. *Ingersoll-Rand Financial Corp. v. Employers Ins. Of Wausau*, 771 F.2d 910, 912 (5th Cir. 1985); *Fireman's Fund Ins. Co. v. Wilburn Boat Co.*, 300 F.2d 631, 633 (5th Cir. 1991); *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882 (5th Cir. 1991).  Moreover, the Hull Policy contains a choice-of-law provision stating that "[i]n the case of any dispute arising out this insurance, the same shall be governed by and construed in accordance with Louisiana law…" (R. Doc. 214-4).

Under Louisiana law, "[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Cadwallader v. Allstate Ins. Co.,* 848 So.2d 577, 580 (La.2003). The Louisiana Civil Code provides that "[i]nterpretation of a contract is the determination of the common intent of the parties." La. Civ.Code Ann. art. 2045 (1987); *see also Cadwallader,* 848 So.2d at 580; *La. Ins. Guar. Assoc. v. Interstate Fire & Cas. Co.,* 630 So.2d 759, 763 (La.1994). An insurance contract must be "construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy." La.Rev.Stat. Ann. § 22:654 (2004). Interpretation of an insurance contract generally involves a question of law. *Bonin v. Westport Ins. Corp.,* 930 So.2d 906, 910 (La.2006) (citing *Robinson v. Heard,* 809 So.2d 943, 945 (La.2002)); *see also La. Ins. Guar. Assoc.,* 630 So.2d at 764.

 "The words of a contract must be given their generally prevailing meaning." La. Civ.Code Ann. art. 2047 (1987); *see also Cadwallader,* 848 So.2d at 580. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ.Code Ann. art. 2046 (1987). "If the policy

wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written." *Cadwallader,* 848 So.2d at 580.  Where, however, an insurance policy includes ambiguous provisions, the "[a]mbiguity ... must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding other policy provisions." *La. Ins. Guar. Ass'n,* 630 So.2d at 763 (citing La. Civ.Code Ann. art. 2050 (1987) ("Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.")). "Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." La. Civ.Code Ann. art. 2048 (1987). "A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective." *Id.* art. 2049 (1987).

Ambiguity may also be resolved through the use of the reasonable-expectations doctrine—i.e., "by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." *La. Ins. Guar. Ass'n,* 630 So.2d at 764 (quoting *Breland v. Schilling,* 550 So.2d 609, 610–11 (La.1989)). "The court should construe the policy 'to fulfill the reasonable expectations of the parties in light of the customs and usages of the industry.' " *Id.* (quoting *Trinity Indus., Inc. v. Ins. Co. of N. Am.,* 916 F.2d 267, 269 (5th Cir.1990)). "A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." La. Civ.Code Ann. art. 2053 (1987).

"If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the drafter, or, as originating in the insurance context, in favor of the insured." *La. Ins. Guar. Ass'n,* 630 So.2d at 764.

of the Louisiana Civil Code provides: "In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.  A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party." La. Civ.Code Ann. art. 2056 (1987). "Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer." *Cadwallader,* 848 So.2d at 580. "That strict construction principle applies only if the ambiguous policy provision is susceptible to two or more *reasonable* interpretations; for the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable." *Id.* The fact that a term is not defined in the policy itself does not alone make that term ambiguous. *Am. Deposit Ins. Co. v. Myles,* 783 So.2d 1282, 1287 (La.2001). "An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion." *Cadwallader,* 848 So.2d at 580. "Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms." *Id.*

### C.  Sue and Labor Clauses

Sue and Labor clauses, which date back to the seventeenth century, are founded on the premise that an insured has a legal duty to prevent a loss and must use due diligence to save and preserve damaged property.  *Reliance Ins. Co. v. The Escapade*, 280 F.2d 482, n. 11 (5th Cir. 1960).  Accordingly, the purpose of the clause is twofold: (1) encourage the assured to take steps to prevent a threatened loss; and (2) if a loss does occur, to take steps to mitigate it.  *Id.*  The clause makes express the duty implied in law on the part of the insured to labor for the recovery

and restitution of damaged or detained property.  By reimbursing the insured for the cost

incurred, the clause functions as a devise to encourage prevention or mitigation of damages.  *St.*

*Paul Fire & Marine Ins. Co. v. SSA Gulf Terminals, Inc.*, No. CIV.A. 01-3063, 2002 WL

31260153, at *4 (E.D. La. Oct. 8, 2002) (internal citations and quotations omitted).

      In *Reliance Ins. Co. v. The Escapade*, the Fifth Circuit held as follows:

> Since an assured has the duty toward his underwriter to exercise the care of a prudent
> uninsured owner to protect insured property in order to minimize or prevent the loss from
> the occurrence for which the underwriter would be liable under the policy, the clause
> undertakes to reimburse the assured for these expenditures which are made primarily for
> the benefit of the underwriter either to reduce or eliminate a covered loss altogether.

*Id.* at 488 (5th Cir. 1960).  However, the expenses must have been incurred for the purpose of

avoiding or minimizing a loss for which the insurer would have been liable.  *See id.* at 489; *see*

*also Danos Marine, Inc. v. Certain Underwriters at Lloyd's*, No. CIV.A. 07-2675, 2008 WL

4948790, at *7 (E.D. La. Nov. 18, 2008) ("As the Third Circuit has stated 'the purpose of the sue

and labor clause is to reimburse the insured for costs incurred to satisfy the insured's duty to the

insurer. If the insured acts to prevent a loss that is not covered by the policy, there is no duty or

benefit to insurer; the obligation only exists when the action taken is to prevent a loss for which

the underwriter would be liable."') (quoting *GTE Corp. v. Allendale Mutual Ins. Co.,* 372 F.3d

598, 618 (3d Cir.2004).  In other words, if there is no coverage under a hull policy, the insurer is

under no contractual obligation to repay the sue and labor expenses.  *See Blasser, Inc. v.*

*Northern Pan-American Line*, 628 F.2d 376,386 (5th Cir. 1980)("The purpose of the sue and

labor clause is to reimburse the insured for those expenditures which are made primarily for the

benefit of the insurer to reduce or eliminate a covered loss.").  Therefore, the issue before the

Court is whether the Policy covered damage to Boh's Crane Barge.

    **D.  Does the Hull and Machinery Policy Cover Damage to the Crane-Barge?**

Given that the sue and labor clause allows the assured to recover those expenses it incurred in attempting to avoid or minimize a loss, *provided the loss is from a peril insured against under the hull policy*, the critical issue before the Court is whether damage Boh's Crane Barge was insured against under the Hull and Machinery Policy.

The Hull Underwriters argue that the Policy did not provide coverage to the Crane Barge because the Crane Barge was not a scheduled vessel under the Policy. The Policy plainly states that it "insures *as per attached schedule*" and that the "Subject Matter of this insurance is the vessel called the *as per attached schedule*." (R. Doc. 217-4 at 13). Generally speaking, hull polices indemnify the assured (i.e., vessel owner, vessel operator, or other with an insurable interest in the vessel) against physical loss or damage to the insured vessel proximately caused by covered perils enumerated in the policy. The measure of recovery under the hull policy is limited by the "agreed value" of the vessel stipulated in the hull policy. Robert T. Lemon II, *Allocation of Marine Risks: An Overview of the Marine Insurance Package*, 81 Tul. L. Rev. 1467, 1468-69 (2007).

In arguing that the Crane Barge was covered by the Policy, Boh points to (i) the text of the sue and labor clause, (ii) the Hull Underwriters' settlement with Boh, and (iii) the inclusion of collision and tower's liability. The third paragraph of the Sue and Labor clause provides that it applies to "expenses reasonably incurred in salving or attempting to salve the vessel *and other property* to the extent that such expenses shall be regarded as having been incurred in respect of the vessel." (R. Doc. 214-4) (emphasis added). In support of its argument, Boh emphasizes the "and other property" clause for its assertion that the Crane Barge is covered even though it is not listed as a scheduled vessel. Under Louisiana law, each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the

contract as a whole.  *Coleman v. School Bd. of Richland Parish*, 418 F.3d 511, 516–517 (5th Cir.2005).  Thus, when this contract is read as a whole, with the introductory paragraphs' explicit reference to scheduled vessels, it seems unreasonable to read the reference to "other property" as indicating that the sue and labor clause necessarily includes damaged third-party vessels, which are not "scheduled."

The question then becomes whether the inclusion of "Collision and Tower's Liability" and the settlement agreement between Boh and the Hull Underwriters change this analysis.

Pursuant to the "Collision and Tower's Liability",

If the vessel shall…cause her tow to come into collision with any other vessel, craft, or structure, floating or otherwise, or shall cause any loss or other damage to her tow or to the freight thereof or to the property on board, and the Assured, or the Surety, in consequence of the vessel being at fault, shall become liable to pay and shall pay by way of damages to any other person or persons or any sum or sums, we, the Underwriters, will pay the Assured or the Surety, whichever shall have paid…

(R. Doc. 217-4).  Boh argues that the damage to its Crane Barge is covered pursuant to the collision and tower's liability, pilotage and towage and contractual liability provisions of the Policy.  In support of this argument, Boh asserts that the Hull Underwriters have already paid $680,000 to Boh pursuant to these coverages.  (R. Doc. 217-1 at 8).  Conversely, the Hull Underwriters assert that they participated in the settlement in their capacity as the primary Collision and Tower's Liability insurer of ABC, not as the direct insurer of Boh.

The language of the Collision and Tower's liability provision i.e., the emphasis on "the vessel" and "her tow", supports the Hull Underwriters' position that it participated in the settlement as a liability underwriter providing coverage to ABC for collision or tower's liability that ABC may have had to third parties.  Thus, the settlement of Boh's tort claim against ABC has little bearing on Boh's separate claim for first-party Sue and Labor coverage under the Hull Policy.  Because the Hull Policy does not provide first-party hull coverage for Boh's Crane

Barge, Boh cannot rely on the sue and labor clause to recover expenses allegedly incurred to minimize loss to that barge.

While this Court appreciates that ambiguous contractual provisions are to be construed against the insurer and drafter of the policy and in favor of coverage, the Sue and Labor provision, when read in reference to the Policy as a whole, is not ambiguous.  To read the Policy as providing first-party hull and machinery coverage for not just scheduled vessels, but for any vessel or barge that it may from time to be engaged to tow would be unreasonable as it would ignore the plain reading of the entire rest of the Policy.  An underwriter likely would not agree to provide hull insurance, separate from the scheduled vessels listed in the policy, when the underwriter would be unable to ascertain the value of the property he was to insure.  Additionally, it should be noted that Boh purchased its own hull coverage, including for sue and labor expenses, on its Crane Barge from a different insurer. (R. Doc. 217-7).  Given that the stated purpose of sue and labor is mitigation, it is reasonable that parties to towage contracts would provide their own hull insurance, including sue and labor, for their own property, and not for the property and vessels of anyone else.

IV.    **CONCLUSION**

It is well-settled that sue and labor clauses in marine insurance policies constitute separate insurance such that liability for sue and labor expenses is supplementary to the insurer's contract to pay a particular sum in respect to damage sustained by the subject matter of the insurance.  *Reliance Ins. Co. v. The Escapade*,  280 F.2d 482 (5th Cir. 1960).  However, it is also well-settled that "[t]he 'sue and labor' clause does not operate as an enlargement of the perils underwritten against it." *Continental Food Prods., Inc. v. Ins. Co. of North America*, 554 F.2d 834, 837 (5th Cir. 1977) ("Because the purpose of the clause is to reimburse the assured for

expenses incurred in satisfying his duty to the underwriter, there is no such duty where the policy…does not afford coverage).  Thus, the most reasonable reading of the "Sue and Labor" clause, as separate from the "Collision and Tower's Liability" is that even if there is a Total Loss to a *scheduled* vessel, the Hull Policy still provides Sue and Labor coverage in excess of "the amount insured hereunder," i.e., in excess of the scheduled value of the scheduled vessel.

Accordingly, IT IS ORDERED that the Hull Underwriters' Motion for Summary Judgment (R. Doc. 214) is GRANTED and Boh's Cross-Motion for Partial Summary Judgment (R. Doc. 217) is DENIED.