| | | |
|---|---|---|
| MICHELLE COLLINS, INDIVIDUALLY AND<br>AS PERSONAL REPRESENTATIVE OF THE ESTATE<br>OF MICHAEL COLLINS | *<br>*<br>*<br>* | CIVIL ACTION |
| VERSUS | *<br>* | NO. 14-1900 |
| A.B.C. MARINE TOWING, L.L.C. AND<br>BOARD OF COMMISSIONERS PORT<br>OF NEW ORLEANS | *<br>*<br>* | SECTION: "L" (3) |

## ORDER AND REASONS

Before the Court are Lloyd's[1] motion for partial summary judgment, the Port's motion for summary judgment, and the Port's motion to bifurcate trial. The Court heard oral arguments on July 5, 2017. Having considered the parties' arguments, submissions and applicable law, the Court now issues this Order and Reason.

**I. BACKGROUND**

This insurance dispute arises out of a fatal collision at the Florida Avenue Bridge, which spans the Inner Harbor Navigational Canal in Orleans Parish, Louisiana. On or about August 12, 2014, a spud barge and attached barge crane were being transported by the M/V CORY MICHAEL through the Canal from the Intercoastal Waterway towards the Mississippi River. The M/V CORY MICHAEL is owned by ABC Marine. *See* Rec. Doc. at 5; Case No. 16-cv-11559. Boh Brothers was the owner/operator of the barge. *See id.* The Board of Commissioners of the Port of New Orleans ("Port") was the owner/operator/custodian of the Florida Avenue Bridge. *See id.*

At approximately midnight on August 13, 2014, Mr. Michael Collins, decedent, was operating the M/V CORY MICHAEL, which was pushing the spud barge and barge crane. *See*

---

[1] For the purpose of this Order and Reasons, "Lloyd's" refers interchangeably to Plaintiff and its possessive form.

*id.* at 5. Mr. Collins had contacted the Florida Avenue Bridge and requested sufficient clearance to allow safe passage underneath the bridge. *Id.* As the M/V CORY MICHAEL passed underneath, the bridge was not sufficiently raised, and the mast of the crane struck the bridge superstructure, which caused the raised crane boom to fall and crush the pilot house. *Id.* Mr. Collins was killed. *Id.* at 6.

A variety of maritime claims and cross claims were filed, settled or addressed in this Court as a result of the accident, and were consolidated under Case No. 14-cv-1900. The instant action, however, remains. *See generally* Rec. Doc. 1; Case No. 16-cv-11559. Lloyd's issued a Protection and Indemnity Insurance Policy ("P&I Policy") to ABC Marine, providing primary and excess hull and machinery collision insurance. *See id.* at 2. Parties dispute whether ABC Marine listed Boh Brothers as an additional insured under the P&I Policy. The P&I Policy contained a subrogation clause that subrogated all rights to which the assured may have against a third person to Lloyd's. *Id.*

In the wake of the above described allision, Boh Brothers filed a claim against the Port seeking compensation for damages sustained by the barge and a third-party complaint against Lloyd's in this action, seeking insurance coverage for the claims asserted against Boh Brothers and for Boh Brothers's own losses. *Id.* at 6. Lloyd's and Boh Brothers resolved the coverage dispute over Boh Brothers's losses by which Lloyd's paid Boh Brothers $320,000.00. *Id.* at 7. Lloyd's now claims that as a result of this payment, Lloyd's was subrogated to Boh Brothers's rights against the Port under the blanket subrogation clause in the P&I Policy, Louisiana law, and equity. *Id.* Because Lloyd's was subrogated to Boh Brothers's rights against the Port, Lloyd's claims that the Port is now liable to it in the amount of $320,000.00, plus interest, fees, and costs. *Id.* at 8. Meanwhile and separately, the Port settled with Boh Brothers regarding the claim Boh

Brothers asserted against the Port for the damages to its barge and crane resulting from the bridge collision. *See* Rec. Doc. 385-1 at 3.

The Port timely answered Lloyd's complaint and raised a number of affirmative defenses, including prescription, estoppel, laches, and the statute of limitations. Rec. Doc. 4 at 1. The Port admits to entering into a confidential settlement agreement with Boh Brothers and asserts it had no knowledge of Lloyd's alleged subrogation rights when it settled with Boh Brothers. *Id.* at 6. The Port notes that fault will be determined at trial, and should act as a complete bar or mitigating factor to Lloyd's recovery; furthermore, the Port alleges, among other things, that Collins had the last clear chance to avoid the accident, that the Port did not contribute to the property loss, that any loss was caused by third parties or intervening acts, that Collins and ABC Marine violated the primary duty doctrine, and that Lloyd's has no right of action. *Id.* at 7. In addition, the Port claims that Lloyd's has waived rights of subrogation, that Boh Brothers was not made whole, and that if subrogation rights exist, they were waived when Lloyd's failed to notify the Port of its subrogation claim. Finally, the Port pleads Louisiana Civil Code articles 1826(b) and 2644 in its defense. *Id.*

## II. PRESENT MOTIONS

Lloyd's filed a motion for partial summary judgment, averring that some of the Port's affirmative defenses must be struck. Rec. Doc. 361. The Port opposes the motion. Rec. Doc. 389. The Port also moved for summary judgment based on three arguments. Rec. Doc. 385. First, the Port argues that Lloyd's has no subrogation rights because the subrogation clause in the Primary P&I Policy does not apply to Boh Brothers. *Id.* at 8-10. Second, the Port argues that its settlement agreement with Boh Brothers terminated any subrogation rights Lloyd's may have had, because the Port had no notice or knowledge of it. *Id.* at 10-16. Finally, the Port argues that one-third of Lloyd's rights, if any, were transferred to another insurer, Certain Underwriters at Lloyd's, London

3

("Excess Underwriters"). *Id*. at 16. Lloyd's filed an opposition to the Port's motion for summary judgment. Rec. Doc. 387.

Additionally, the Port filed a motion to bifurcate the trial into two parts: (1) Lloyd's subrogation claims, and (2) the remaining issues on liability, contributing fault, amount of loss, resulting from the bridge allision, and amount of the subrogated claim. Rec. Doc. 375-1 at 3.

## III. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398 (5th Cir. 2008).

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. When the moving party has met its Rule 56(c) burden, "[t]he non-movant cannot avoid summary judgment . . . by merely making 'conclusory allegations' or 'unsubstantiated assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (quoting *Little*, 37 F.3d at 1075). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). All reasonable

inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

### B. Bifurcation of Trial

Federal Rule of Civil Procedure 42(b) provides: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial." Fed. R. Civ. P. 42(b). "A motion to bifurcate is a matter within the sole discretion of the trial court, and the appellate court will not reverse the trial court's decision absent an abuse of that discretion." *First Tex. Sav. Assoc. v. Reliance Ins. Co.*, 950 F.2d 1171, 1174 n.2 (5th Cir. 1992) (citing *Gonzalez–Marin v. Equitable Life Assurance Soc'y.*, 845 F.2d 1140, 1145 (1st Cir. 1992)).

The Fifth Circuit has recognized an important limitation on ordering a separate trial of issues under Rule 42(b). "[T]he issue to be tried must be so distinct and separate from the others that a trial of it alone may be had without injustice." *Swofford v. B. & W., Inc.*, 336 F.2d 406, 415 (5th Cir.1964), *cert. denied*, 379 U.S. 962, (1965). Moreover, "even if bifurcation might somehow promote judicial economy, courts should not order separate trials when bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice." *Laitram Corp. v. Hewlett-Packard Co.*, 791 F. Supp. 113, 115 (E.D. La. 1992) (quoting *Willemijn Houdstermaatschaapij BV v. Apollo Comput.*, Inc., 707 F.Supp. 1429, 1433 (D. Del. 1989)); *see also Interstate Restoration Grp., Inc. v. Al Copeland Invs.*, Civ. A. 07–0970, 2009 WL 1870787,

at *2 (E.D. La. June 25, 2009). "Prejudice is the Court's most important consideration in deciding whether to order separate trials under Rule 42(b)." *Laitram Corp.*, 791 F.Supp. at 115.

Rule 42(b) provides three separate justifications for bifurcation. "A court may separate issues if (1) it would avoid prejudice, (2) it would be convenient to do so, or (3) it would be economical or would expedite the litigation to do so." *Id*.

### C. Maritime Contract Interpretation

Construction of maritime contract is generally governed by federal maritime law. *See M.O.N.T. Boat Rental Service, Inc. v. Union Oil Co*., 613 F.2d 576 (5th Cir. 1980); *Corbitt v. Diamond M Drilling Co.*, 654 F.2d 329 (5th Cir. 1981) (interpretation of indemnity provision in maritime contract governed by federal maritime law). In the absence of a specific and controlling federal maritime rule over this dispute, the Court interprets maritime insurance contract under Louisiana state law. *See Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 886 (5th Cir. 1991); *see also Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310 (1955) (absence of federal legislation or conflicting rule, state law applied to interpretation of certain contracts for marine insurance). Here, regardless of which law is applicable, the resolution of the issues only requires the Court to give a reasonable, sensible interpretation to the specific clauses in this case. Thus, the choice of law issue is not germane to interpreting the language of this provision.

"Under Louisiana law, insurance policies are contracts between the parties and 'should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code.'" *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 512 (5th Cir. 2014) (quoting Cadwallader v. Allstate Ins. Co., 848 So.2d 577, 580 (La. 2003)). "When interpreting a contract, the court must discern the parties' common intent." *Id*. "The parties' intent as reflected by the

words in the policy determine[s] the extent of coverage." *Id*. (quoting *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 763 (La. 1994)).

"Where the terms of the contract are clear and explicit and do not lead to absurd consequences, no further interpretation may be made in search of the intent of the parties." *Id*. (citing La. Civ. Code art. 2046). "'[W]ords of a contract must be given their generally prevailing meaning,' but '[w]ords of art and technical terms must be given their technical meaning when the contract involves a technical matter.'" *Id*. (quoting La. Civ. Code art. 2047) (alterations in original). "Each provision in [the] contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code art. 2050.

## IV. DISCUSSION

### A. Notice of Subrogation

The parties dispute whether Lloyd's gave notice to the Port of the underwriter's subrogation rights. Under Louisiana law, "[s]ubrogation is the substitution of one person to the rights of another." La. Civ. Code Ann. art. 1825. Louisiana law recognizes only conventional subrogation (by contract) and legal subrogation. *Institute of London Underwriters v. First Horizon Ins. Co.*, 972 F.2d 125 (5th Cir. 1992). "When subrogated to the rights of the insured, the insurer stands in the shoes of the insured and thereby acquires the independent right to assert the actions and rights of the insured." *Bailsco Blades & Casting Inc. v. Fireman's Fund Ins. Co*., 31,876 (La. App. 2 Cir. May 5, 1999), 737 So.2d 164 (citing *Barreca v. Cobb*, 95-1651 (La. 2/28/96), 668 So.2d 1129); La. Civ. Code art. 1825 & 1826. Article 1826 of Louisiana Civil Code, cited by the Port within its Seventeenth Defense, provides:

> A. When subrogation results from a person's performance of the obligation of another, that obligation subsists in favor of the person who performed it who may avail himself of the action

7

        and security of the original obligee against the obligor, but is extinguished for the original obligee.

    B. An original obligee who has been paid only in part may exercise his right for the balance of the debt in preference to the new obligee. This right shall not be waived or altered if the original obligation arose from injuries sustained or loss occasioned by the original obligee as a result of the negligence or intentional conduct of the original obligor.

La. Civ. Code, art. 1826.

Article 2644 of the Louisiana Civil Code, also cited by the Port within its Seventeenth Defense, states: "When the debtor, without knowledge or notice of the assignment, renders performance to the assignor, such performance extinguishes the obligation of the debtor and is effective against the assignee and third persons." Both parties agree that a payment by the original obligor, without notice of the obligee's assignment or subrogation of the debt, will extinguish the debt and preclude a recovery by the subrogee. Rec. Doc. 361-1 at 12; Rec. Doc. 385 at 10-11. The parties, however, dispute whether notice was given and sufficient, and whether the Port had knowledge of Lloyd's subrogation rights from Boh Brothers.

    1.    <u>Lloyd's Motion for Partial Summary Judgment</u>

Lloyd's move to strike the Port's affirmative defense (lack of notice), based on Louisiana Civil Codes, claiming that the Port did not have notice of Lloyd's subrogation rights when it settled the claims brought against the Port by Lloyd's additional insured, Boh Brothers. Rec. Doc. 361-1 at 1.

Lloyd's argues that the Port had actual and sufficient notice, arising from multiple encounters and court filings from the parties. Lloyd's points out that the claim by Boh Brothers against Lloyd's for damage to Boh Brothers's crane barge was settled on the basis that Boh Brothers was an additional insured under its P&I Policy. *Id.* Lloyd's paid Boh Brothers $320,000.00. *Id.* Lloyd's advised the Court and all parties that a settlement had been reached for

8

coverage for the damage to Boh Brothers's crane barge. *Id.* Lloyd's avers that because the Primary P&I Policy was filed into the record and the Lloyd's-and-Boh Brothers settlement was known, the Port, a sophisticated entity and represented by experienced maritime lawyers, was already on notice—or should have known—that any payment to Boh Brothers would trigger the Primary P&I Policy's Subrogation Clause. *Id.* at 6-7.

Lloyd's also relies on an unsworn declaration from Harry Morse, who at the time represented ABC Marine, to show that the Port had notice. After the payment of $320,000.00 by Lloyd's to Boh Brothers, Morse allegedly had a discussion with counsel for the Port, Edward LeBreton, III, during which he told LeBreton that the claim by Boh Brothers against Lloyd's had settled, but that Lloyd's Primary Insurer had retained their right to subrogation. *See* Rec. Doc. 361-1, Exh. A at 3. Lloyd's argues that "this conversation alone provided the Port with actual knowledge of Primary P&I Underwriters' subrogation rights." Rec. Doc. 361-1 at 8. Additionally, Morse had previously participated in a settlement conference with the parties involving the underlying litigation, which included LeBreton and counsel for Boh Brothers, Michael Riess. *Id.* (citing Unsworn Decl. of Harry Morse, at 3). The settlement conference took place after the $320,000.00 payment to Boh Brothers by Lloyd's, during which time Morse asked LeBreton how the subrogation issues were going to be addressed. *See id.* Lloyd's highlights that the settlement conference illustrates that the Port was provided with actual notice of Lloyd's subrogation rights before it settled with Boh Brothers. *See id.*

In its motion for partial summary judgment, Lloyd's relies on *State National Fire Insurance Co. v. Sykes*, 527 So.2d 589 (La. App. 3d Cir. 1988). There, the Louisiana Third Circuit Court of Appeals held that an insurer that paid its insured to compensate for damage to the insured's property was not precluded from pursuing a subrogated claim against the tortfeasor,

9

because the tortfeasor had notice of the insurer's subrogated rights before it paid a settlement to the insured. The case arose out of an accident in which the defendant, Sykes, drove his truck into a home owned by the insured of State National Fire Insurance Company. *Id.* at 591. State National paid its insureds to repair their home, and thereby became partially subrogated to the insureds' rights against Sykes. *Id.* State National's insureds filed suit against Sykes and Sykes' insurer, and eventually settled that claim. Prior to that settlement, Sykes and his insurer were informed several times of State National's right to subrogation. *Id.* at 591. Accordingly, the Louisiana Third Circuit held that State National "has a right to pursue its claim against Sykes and [Sykes' insurer] rather than be forced to go against the [insureds] because [Sykes' insurer] had notice of State National's subrogation claim prior to their settlement with the [insureds]. *Id.* at 591-92.

2. Port's Opposition, Motion for Summary Judgment, and Reply

The Port contends in its opposition and motion for summary judgment that Lloyd's failed to provide sufficient notice about its subrogation rights from Boh Brothers. First, the Port argues that the court filings about settlement between Boh Brothers and Lloyd's do not establish actual knowledge by the Board of the assignment from Boh Brothers to Lloyd's. Rec. Doc. 389 at 3. The Port further contends that the filings are by Boh Brothers—not Lloyd's—and in connection to a completely unrelated motion involving a different insurer about the recovery of "sue and labor" costs. *Id.* LeBreton, the Port's counsel, testifies that he did not read the lengthy P&I Policy or settlement agreement when those documents were filed into the record, and had "absolutely no duty to do so to protect the subrogation rights of another party, Lloyds, whom he did not represent, for its benefit of protection." *Id.* at 3-4.

Moreover, the Port challenges Morse's credibility because he has represented ABC Marine in this consolidated litigation, as well as Boh Brothers until this Court dismissed all remaining

claims against Boh Brothers on March 3, 2016. At deposition, Morse testified that, while representing Boh Brothers and ABC Marine, he told LeBreton, generally, that Lloyd's Primary had not waived subrogation rights. *See id.* at 9. Morse acknowledges that he did not disclose to LeBreton the amount of any potential subrogation claim or what claims were settled. *See id.*

In LeBreton's deposition, he said that Morse told him that Lloyd's Primary Insurer had not waived subrogation in its settlement with Boh Brothers. *See id.* at 10. LeBreton specifically testified that Morse did not tell him, and he never knew, prior to the settlement between Boh Brothers and the Port, the amount of any subrogation claim or the type or nature of any claims which were settled; whether Lloyd's had any intention of making a subrogation claim against the Port; or whether Boh Brothers had relinquished any right to pursue any part of the claim against the Board. *See id*. at 10. LeBreton claims that he had always believed, until well after the settlement with Boh Brothers, that Boh Brothers completely retained all rights to pursue, and was the proper party to pursue its claims against the Port. *See id*. The Port argues that Boh Brothers represented in the settlement agreement with the Port that it had not assigned any portion of its claim against the Port. *See id*.

The Port distinguishes *Sykes* from the instant case in that the subrogated insurer there had "on several occasions" notified Sykes's insurer of the payment to the owners of the damaged residence and its intention to proceed with a subrogation claim. *See id*. The Louisiana Third Circuit, however, never elaborated on what the "several occasion" entailed.

Finally, in its Reply, the Port argues that Boh Brothers did not have first-party coverage under Lloyd's primary policy because the P&I Policy only provides coverage to scheduled vessels, which are listed as TROY JACOB, TODD MICHAEL; and CORY MICHAEL (the vessel involved in this collision). *See generally* Rec. Doc. 392-2 at 1-9. Therefore, the Port contends

that Boh Brothers cannot afford Lloyd's with subrogation rights—because the barge was not insured since it was not listed as a covered vessel under the policy.

3. <u>Summary Judgment, on the Notice or Knowledge Issue, Is Denied.</u>

There is a genuine dispute of material fact: whether the Port had knowledge or sufficient notice of Lloyd's subrogation rights from Boh Brothers. In *Sykes*, a Louisiana appellate court ruled that a subrogee-insurer could pursue its claim against a tortfeasor and his insurer despite the existence of a settlement between the subrogor-insured and the tortfeasor's insurer. 527 So.2d 589 at 592. There, the subrogee-insurer had notified the tortfeasor's insurer of its subrogation claim prior to the settlement. *Id*. at 589. The *Sykes* defendant relied on *Audubon Ins. Co. v. Farr*, 453 So.2d 232 (La. 1984) in support of its argument that the subrogation claim was extinguished by the settlement. *Id.* at 591. The Louisiana Third Circuit distinguished *Farr* from *Sykes* based on a key factor: the subrogee in *Farr* failed to provide notice of its subrogation claim to the defendant. *Id*. at 591-92 (citing *Farr*, 453 So.2d at 235); William Shelby McKenzie and H. Alston Johnson III, Insurance Law and Practice, § 10.333, pp. 1018-19 in 15 La. Civ. Law Treatise (3d ed. 2006).

In *State Farm Mutual Auto. Ins. Co. v. U.S. Postal Service*, the Western District of Louisiana denied the postal service's motion for summary judgment because the court found it had notice of plaintiff's subrogation rights. No. CIV. A. 10-0083, 2012 WL 32420 (W.D. La. Jan. 5, 2012). There, State Farm filed a complaint seeking to be reimbursed for funds paid to its insured, Shirley Joshua, arising from a motor vehicle accident with a USPS truck. *See id.* at *1. State Farm paid Joshua $5,566.75 for the vehicle and associated property damage costs. *Id.* State Farm then presented its administrative claim to the USPS to recover for damages. State Farm's request was accompanied by a letter which very clearly put the USPS on notice that State Farm was asserting a subrogation claim. *Id* at *2. Nonetheless, the USPS submitted a check for $11,500.00 to Joshua

12

and her attorney, along with only a letter stating that acceptance of the check operated as a full release of claims against the USPS arising from the incident. *Id.* There was no other receipt and release document, and Joshua and her attorney endorsed and deposited the $11,500.00 check. The USPS argued that acceptance of this check by Joshua satisfied State Farm's subrogation claim under Louisiana state law. *Id.* The district court disagreed, and held that because USPS had knowledge of State Farm's subrogation claim, the postal service's payment to Joshua and her attorney did not terminate the insurer's subrogation right. *Id.* at *3.

In *Sykes* and *State Farm*, both insurers had clearly received actual notices—for example, a letter. The instant case presents a more muddled scenario, and the parties vehemently dispute the extent of LeBreton's knowledge, with both sides pointing to numerous depositions, settlement discussions, and unsworn statements. Nonetheless, what LeBreton—and the Port—knew and when they knew about Lloyd's subrogation rights are questions of material fact. Accordingly, summary judgment based on notice is inappropriate at this juncture, and therefore, is **DENIED**.

### B. The Port's Remaining Arguments for Summary Judgment

The Port has two remaining arguments in its motion for summary judgment. Each will be addressed in turn.

#### 1. Whether Boh Brothers Is Insured Under the P&I Policy

The Port contends that Boh Brothers was not named as an additional insured in the Certificate of Insurance, and thus not entitled to subrogation rights. Rec. Doc. 385-1 at 8-10. The Port also argue that the policy only covered the vessels—not Boh Brothers's barge. Rec. Doc. 392-2 at 2. The P&I Policy, in pertinent part, reads:

> The Assurer shall be subrogated to all the rights which the Assured may have against any other person or entity, in respect of any payment made under this policy, to the extent of such payment, and the Assured shall, upon the request of the Assurer, execute all documents necessary to secure the Assurer such rights . . . .

13

*See id.* The Port points out that the "Assured" only names ABC Marine, including its related companies and "individuals assureds as their respective interests may appear." *Id*. Nor does the P&I Policy name Boh Brothers as an additional insured, according to the Port. *See id.* Thus, the Port asserts that Boh Brothers could not provide Lloyd's with any subrogation rights. And because ABC Marine had settled and released its claims against the Port, it contends that Boh Brothers do not have rights to pursue this matter vis-à-vis ABC Marine.

Lloyd's disagrees. Chiefly, it argues that the Certificate of Insurance notes "Blanket Additional Assureds/Waiver of Subrogation," *see* Rec. Doc. 387-2 at 3, which provides coverage to Boh Brothers because its contract with ABC Marine—the named assured—required ABC Marine to add Boh Brothers as an additional insured. *Id.* at 5. Specifically, Section 10(b)(ii) of the Master Service Contract between ABC Marine and Boh Brothers states: "The insurance policies required to be maintained by [ABC Marine] pursuant to this Section shall: [n]ame BOH BROS. as an additional insured to the extent of the indemnity obligations assumed by [ABC Marine] hereunder." Rec. Doc. 67-2 at 6-7 (Master Service Contract – Vessels). Further, Section 11 of the Contract provides:

> [ABC Marine] hereby agrees to defend, indemnify, and hold harmless BOH BROS. from and against any and all demands, liabilities, claims, suits, judgments, proceedings, orders, causes of action, damages, losses, costs and expenses . . . whether on account of bodily injury to or death of any person, property damage (including, but not limited to any immovable or movable property of BOH BROS. or others, whether now in existence or hereinafter acquired or constructed) . . . regardless of the underlying legal or equitable theory, and howsoever and whenever the same may arise, be caused or be claimed, incurred by, asserted against, suffered by or claimed against or sought from BOH BROS. that arise directly or indirectly out of, results from or is in the connection with [ABC Marine's] activities relating to or the operations of the Vessel or the performance of this Agreement. [ABC Marine's] defense and indemnity obligations hereunder shall apply and be binding on

> [ABC Marine] even if it is alleged or even proven that the fault, negligence or liability, in whole or in part, of BOH BROS. played any part in causing or contributing to the incident or claim giving rise to the request for defense and indemnification by BOH BROS.
> . . .

*Id*. at 7-8.

This Court finds that the "blanket additional assureds" provision provided Boh Brothers with P&I coverage. A blanket additional insured endorsement generally provides coverage for any person or organization to whom or to which the named insured is obligated to name as an additional insured by virtue of a written contract or agreement. *See* 3 *Couch on Insurance* § 40:30 (3d ed. 2014). The P&I Policy's "Additional Remarks" section notes "Blanket Additional Insured." Rec. Doc. 387-2 at 3. Thus, by virtue of the contract between Boh Brothers and ABC Marine, Boh Brothers became an additional first-party insured under the endorsement. *See, e.g.*, *ATOFINA Petrochem., Inc. v. Continental Cas. Co.*, 185 S.W.3d 440, 441-43 (Tex. 2005) (finding owner was additional insured under contractor's insurance policy by virtue of owner-contractor construction contract and blanket additional insured endorsement); *Deville v. Conmaco/Rector L.P.*, 516 Fed. App'x. 296, 298, 302 (5th Cir. 2012) (finding equipment lessor, whose lease required that lessee obtain insurance "naming the Lessor . . . as an additional named insured" was an additional insured under policy's blanket additional insured endorsement). The Master Service Contract clearly required ABC Marine to "[n]ame BOH BROS. as an additional insured to the extent of the indemnity obligations assumed by [ABC Marine]." Rec. Doc. 67-2 at 6-7.

Moreover, although Boh Brothers's barge is not directly scheduled as a covered vessel, the M/V CORY MICHAEL, which is undisputedly listed in the P&I Policy, was pushing the spud barge and barge crane at the time of the incident, and the latter became a part of the M/V CORY MICHAEL's tour. *See* Rec. Doc. 1 at 5. As noted, pursuant to the "Master Service Contract –

15

Vessels," ABC Marine was required to have Boh Brothers added as an additional insured in the Primary P&I Policy. Rec. Doc. 67-2 at 6-7. Boh Brothers sought coverage under this policy for (1) Boh Brothers's potential liability exposure and (2) direct coverage for damages to Boh Brothers's property. *See id.*; *see also* Rec. Doc. 361-1 at 3. Therefore, the Court concludes that the blanket additional insured provision covered Boh Brothers's barge.

"In cases involving contract interpretation, summary judgment is appropriate if the contract in question is unambiguous and can be given a certain or definite legal meaning or interpretation." *Administrators of Tulane Educ. Fund v. Debio Holding, S.A.*, 177 F.Supp.2d 545, 548 (E.D. La. 2001). This Court finds that Lloyd's has subrogation rights resulting from its payment to Boh Brothers. Accordingly, the Port's motion for summary judgment dismissing the subrogation issue is **DENIED**. There remains a material dispute as to the notice issue. *See supra* Section IV.A.

        2.      <u>The Port Argues that, At Most, Lloyd's Is Only Entitled to Two-Thirds of the Claim.</u>

Finally, the Port alleges and argues that Lloyd's has transferred or assigned subrogation rights to another insurer, Certain Underwriters at Lloyd's, London ("Excess Underwriters"), which issued an excess policy to ABC Marine and specifically waived subrogation against the Board in its settlement with Boh Brothers. Rec. Doc. 385-1 at 3.

Lloyd's Primary Insurer contends that no "transfer" or "assignment" of any rights has occurred, as there is "no contract, agreement or other evidence of such." Rec. Doc. 387 at 18. Lloyd's further asserts that they are the only claimants in this subrogation action, and they have merely agreed to give one-third of their recovery to Excess Underwriters. *Id.* Lloyd's argues: "What [Lloyd's does] with the money that it recovers in this matter is immaterial to the issues currently before the Court." *Id.* at 19.

16

Indeed, unless and even if the Port can assert some concrete evidence of such transfer or assignment, their argument for a discounted claim is irrelevant. As Plaintiff explains, "[t]he agreement by [Lloyd's] to pay Excess Underwriters one third of any recovery was reached to resolve potential conflict between Excess and Primary on issues that are unrelated to Excess' waiver of subrogation rights." Rec. Doc. 387 at 19. The Court has deeply considered the Port's argument that Excess Underwriters's monetary gains from Lloyd's potentially amounts to an "end run" that circumvents a clear waiver in the settlement agreement. Perhaps—but Excess Underwriters is not a party here. Therefore, any bad faith or breach of settlement agreement argument that the Port has against Excess Underwriters should be addressed in a separate lawsuit. Accordingly, the Port's motion on summary judgment for a discounted claim is **DENIED**.

C. **Port's Motion to Bifurcate Trial**

The Port seeks to bifurcate the issues in this matter. *See* Rec. Doc. 375. The Port contends that the issues in the instant action divides into two parts: (1) Lloyd's subrogation claims and (2) the remaining issues including liability, contributing fault, amount of loss, and amount of the subrogated claim. *Id.* Specifically, the Port avers that the first part of the trial contains issues relating to Boh Brothers's claim for insurance, the payment made by Lloyd's to Boh Brothers the contents of the settlement agreement between Boh Brothers and Lloyd's, and the Port's knowledge of Lloyd's potential subrogation claim. *Id.* at 3-4.

The Port claims the witnesses and exhibits relevant to the first and second parts of the trial are distinct; no witness would testify twice. *Id.* at 4. It further states that bifurcation would not cause any delay, additional expense, or duplication. *Id.* In addition, the Port claims that if Lloyd's does not have the right to bring a subrogation claim it would not participate in the second part of the trial. *Id.* The Port alleges eliminating this party from the second trial would save the Court's time. *Id.* The Port also contends that ABC Marine's and the Port's attorneys will be forced to be

both witnesses and attorneys for their clients if the trial is not bifurcated, resulting in prejudice to those parties. *Id.* It alleges that, without bifurcation, the attorneys will not be able to try the case on the remaining issues, which would result in great prejudice to its clients, as the Port would be required to retain new counsel. *Id.* Therefore, the Port requests the Court to bifurcate the trial into two parts: (1) Lloyd's subrogation claim and whether it is prescribed, and (2) the remaining issues of liability of the Port for the collision, contributing fault of ABC Marine and Boh Brothers, loss of use/hire damages for the M/V CORY MICHAEL, and the amount of Lloyd's subrogation claim. *Id.* at 5.

Lloyd's opposes the Port's motion to bifurcate. Rec. Doc. 377. Lloyd's alleges two trials would be less efficient. *Id.* at 2. Lloyd's contends that the Port's belief that a bifurcated trial would be more efficient is based on speculation as to the outcome of the first trial and that does not provide a compelling reason to bifurcate. *Id.* at 3. Lloyd's claims that there is no risk of prejudice if the attorneys for ABC Marine and the Port must serve as witnesses and attorneys. *Id.* In support of that claim, Lloyd's cites the fact that the attorneys were made witnesses in November 2016 and no party has suggested that the attorneys must withdraw from the case. *Id.* Lloyd's avers that in a bench trial the lawyers testifying about a narrow factual issue is not a cause for concern. *Id.* In the alternative, if this Court decides to grant bifurcation, Lloyd's asks that the Court keep the current trial dates. *Id.* at 4.

The Court is mindful of the advantages that bifurcation of the issues in this case could bring. "A court may separate issues if (1) it would avoid prejudice, (2) it would be convenient to do so, *or* (3) it would be economical or would expedite the litigation to do so." *Laitram Corp.*, 791 F. Supp. at 115 (citation omitted). Following this Order, one issue remains as to the viability or extent of Lloyd's subrogation rights: whether the Port had notice or knowledge of Boh

Brothers's subrogation to Lloyd's. If so, then Lloyd's has standing to proceed on its liability claim. But if the Court finds that Lloyd's did not provide sufficient notice or that the Port did not have knowledge of the subrogation, then a trial on the liability claims would be unnecessary. Moreover, because the attorneys in the underlying matter are likely to serve as witnesses to the notice issue, prejudice may occur if both issues—subrogation and liability—are tried together. Therefore, in the interest of fairness and judicial economy, the Port's motion to bifurcate trial is **GRANTED**.

## V. CONCLUSION

Based on the foregoing reasons, accordingly,

**IT IS ORDERED** that Lloyd's motion for partial summary judgment on the notice issue (Rec. Doc. 361) is **DENIED**;

**IT IS FURTHER ORDERED** that the Port's motion for summary judgment on coverage under the P&I policy (Rec. Doc. 385) is **DENIED**;

**IT IS FURTHER ORDERED** that the Port's motion to bifurcate trial (Rec. Doc. 375) is **GRANTED**. As noted in a previous Minute Entry, dated July 6, 2017, the bench trial currently scheduled on July 31, 2017 will be **CONTINUED**. The pre-trial conference currently scheduled for July 17, 2017 at 1:30 p.m. will be converted into an in-person status conference to discuss a date for a trial on the remaining issues.

New Orleans, Louisiana on the 7th day of July, 2017.

ELDON E. FALLON
United States District Judge